80 Cal.Rptr. 622]

[Civ. No. 33150.   Second Dist., Div. Two.   July 7, 1969.]

ALLIED CONCORD FINANCIAL CORPORATION, Plaintiff and Appellant, v. BANK OF AMERICA et al., Defendants and Respondents.

Rich & Ezer and Mitchel J. Ezer for Plaintiff and Appellant.

Harris B. Taylor, Ullar Vitsut, Bette & Loomis and Donald E. Ruppé for Defendants and Respondents.

FLEMING, J.—Under the California Commercial Code, are depositary and collecting banks directly liable to the drawer of a check which they have negotiated on a forged endorsement? If they are liable, how long does their liability last? On 20 December 1965, plaintiff Allied Concord Financial Corporation (Allied) issued in New York a check for $18,637.50 drawn on Bankers Trust Co. of New York and payable to the order of Sandor Spector. On 23 December 1965, John Spector, the payee's brother, intercepted the check, forged the endorsement of Sandor Spector, and obtained payment for the check from defendant City National Bank (City) in California. City endorsed the check for collection to defendant Bank of America (BankAm), which in turn forwarded it through channels to the drawee, Bankers Trust. The latter paid the

check, charged Allied's account, and returned the cancelled check to Allied.

A year elapsed before Allied discovered the forged endorsement. Apparently by that time Allied could no longer require Bankers Trust to reverse its charge against Allied's account. (Com. Code, § 4406, subd. (4); cf. the California statute of limitations. which requires a depositor to bring suit against a bank which has honored a check on a forged endorsement within one year (Code Civ. Proc., § 340, subd. 3).) Accordingly, on 15 March 1967 Allied sued the earlier links in the chain of negotiation, the depositary bank, City, and the collecting bank, BankAm. Since the primary bank liability is that of City, we treat the suit as one between Allied and City.

Allied's complaint against City sought recovery on two theories: guarantee of prior endorsements, and conversion. City's demurrer to the complaint was sustained, and Allied then amended its complaint to charge breach of warranty. City's demurrer was again sustained, this time without leave to amend, and thereafter the complaint was dismissed.

It is apparent that Allied sued City on two theories: contract, based on the guarantees and warranties arising from the check's negotiation; and tort, the conversion of Allied's funds. The questions presented are whether Allied has standing to bring suit against City, and if so, whether it is barred by the one-year statute of limitations. The two questions are interrelated.

*Direct Suit by a Drawer Against a Depositary or Collecting Bank*

Can Allied as the drawer of a check which has been charged to its account under a forged endorsement directly sue depositary and collecting banks which have warranted the validity of the endorsement? Under former California law a drawer had no right of direct action against a collecting bank for losses resulting from a charge made against his account on a forged endorsement. (*California Mill Supply Corp.* v. *Bank of America,* 36 Cal.2d 334 [223 P.2d 849]; *Metropolitan Life Ins. Co.* v. *San Francisco Bank,* 58 Cal.App.2d 528 [136 P.2d 853].) However, the enactment of the Uniform Commercial Code provides an opportunity to consider the matter afresh.

The modern trend of procedure looks on circuity of action with disfavor. Privity of contract is no longer a bar to suit.

(*Peterson* v. *Lamb Rubber Co.*, 54 Cal.2d 339, 341-348 [5 Cal. Rptr. 863, 353 P.2d 575]; *Stewart* v. *Cox*, 55 Cal.2d 857 [13 Cal.Rptr. 521, 362 P.2d 345]; cf. *Heyer* v. *Flaig*, 70 Cal.2d 223, 227-228 [74 Cal.Rptr. 225, 449 P.2d 161].) Likewise the right of third-party beneficiaries to directly enforce promises made and obligations assumed for their benefit has been extensively recognized, both substantively and procedurally. (*Connor* v. *Great Western Sav. & Loan Assn.*, 69 Cal.2d 850, 864-866 [73 Cal.Rptr. 369, 447 P.2d 609]; *Lucas* v. *Hamm*, 56 Cal.2d 583, 589-591 [15 Cal.Rptr. 821, 364 P.2d 685]; *Johnson* v. *Holmes Tuttle Lincoln-Mercury, Inc.*, 160 Cal.App.2d 290 [325 P.2d 193]; *Watson* v. *Aced*, 156 Cal.App.2d 87 [319 P.2d 83].)

On third-party beneficiary principles we think the benefit of warranties given by a bank which negotiates a check on a forged endorsement extends by implication to the drawer of the check. (Com. Code, §§ 4207, 3603, subd. (2).) By allowing direct suit we reduce the circuity of action and make litigation easier between parties located in different jurisdictions. In this case the drawer of the check and the drawee bank are located in New York, and the depositary and collecting banks are located in California. Obvious procedural difficulties are avoided by permitting direct suit by the drawer, the party which suffered the loss, against the depositary bank, the party which first honored the forged endorsement. Settlement in one lawsuit of all aspects of a controversy involving commercial paper is clearly one of the prime objectives of the Commercial Code. (See Com. Code, § 4406, 3803, anno. comment # 8, § 3417: "Where there is an indorsement the warranty runs with the instrument and the remote holder may sue the indorser-warrantor directly and thus avoid a multiplicity of suits which might be interrupted by the insolvency of an intermediate transferor.") We conclude that direct suit by the drawer against a depositary bank is authorized under the Commercial Code. The West Virginia Supreme Court of Appeals has reached a similar conclusion. (*Commercial Credit Corp.* v. *Citizens Nat. Bank* (1965) 150 W.Va. 196 [144 S.E.2d 784]; see also cases collected in 99 A.L.R.2d 638, ff.) Our conclusion is fortified by section 3419, subdivision (3) of the Commercial Code which by implication permits direct suit by the true owner of a forged check against a representative, including a depositary or collecting bank, to the extent of any proceeds remaining in the hands of the representative.

*Time Limitations Governing Suits by the Drawer Against a Depositary Bank on a Forged Instrument*

To apply the proper statute of limitations we must analyze the nature of the cause of action. In the first part of this opinion we concluded that the drawer could bring direct suit against the depositary and collecting banks on an implied contract theory under which it became a third-party beneficiary of the warranties and guarantees given by these banks to subsequent persons in the chain of negotiation back to the drawee bank.

Nevertheless, the rights of the drawer against these banks are secondary to its primary claim against its own bank, the drawee, for having disregarded its specific instruction to pay money to Sandor Spector and not to someone else and for having chaged its account without authority. Whether City paid money to an imposter or whether BankAm and Bankers Trust later reimbursed City for such a payment is no direct concern of the drawer and caused no direct injury to it. Injury to the drawer only occurred when Bankers Trust improperly charged its account. The drawer's primary claim, therefore, is based on its own rights against its own bank. By contrast, its secondary claim essentially derives from the rights of its bank, for its bank is liable to it for an improper charge against its account on a check paid on a forged endorsement, in turn the bank is entitled to recoup from those who earlier in the chain of negotiation warranted the genuineness of the endorsement. Thus, the drawer's rights against prior endorsers derive from those of its bank, and in turn the bank's rights are based on its liability to the drawer. It follows that if the drawee bank has no existing liability to the drawer, then the drawee bank has no claim against the banks which improperly negotiated the instrument because the drawee bank suffered no loss.

Under the California Commercial Code a depositor has one year to report an unauthorized endorsement, and if he does not do so within that period he is barred from later asserting his claim. (Com. Code, § 4406, subd. (4).) This was also the law in California for many years prior to the adoption of the Commercial Code. (Code Civ. Proc., § 340, subd. (3).) We find it significant that the Uniform Commercial Code as originally drafted provided a three-year period for the discovery of a forged endorsement, but, that the California Commercial Code, when adopted, changed this period to one year.

(See, California Code Comment to section 4406.) Under the Commercial Code, defenses available to a drawee bank against claims of its depositor, by clear implication are also available to a collecting or depositary bank. Commercial Code section 4406, subdivisions (4) and (5), reads: "(4) Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subdivision (1)) discover and report his unauthorized signature or any alteration on the face or back of the item or any unauthorized indorsement, and if the bank so requests exhibit the item to the bank for inspection, is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration. The burden of establishing the fact of such unauthorized signature or indorsement or such alteration is on the customer.

"(5) If under this section a payor bank has a valid defense against a claim of a customer upon or resulting from payment of an item and waives or fails upon request to assert the defense the bank may not assert against any collecting bank or other prior party presenting or transferring the item a claim based upon the unauthorized signature or alteration giving rise to the customer's claim."

California Code Comment on this section states: "Subdivision (5) is new law in California. Its effect is to extend the protection of subdivision (4) to collecting banks. See Official Comment 7." Comment 7 refers to the "public policy in favor of imposing on customers the duty of prompt examination of their bank statements and the notification of banks of forgeries and alterations and in favor of reasonable time limitations on the responsibility of banks for payment of forged or altered items."

This is precisely what section 4406, subdivision (5) of the Commercial Code does. That section bars recovery by the drawee bank from depositary and collecting banks for breach of warranty whenever the drawee bank can avoid loss by asserting a defense against the drawer. In allowing direct suit by the drawer against depositary and collecting banks, we would be emasculating the section if we did not also make available to depositary and collecting banks defenses available to the drawee bank. It would make little sense to extend greater protection to the drawee bank than to depositary and collecting banks, for in many instances the drawee bank will

also be the depositary bank which dealt with the forger. (Com. Code, § 4105, subd. (a).)

Therefore, to give effect to the purpose of section 4406, subdivision (5) we hold that the defenses available to the drawee bank under section 4406, subdivision (4) are available to depositary and collecting banks. Since Allied is barred from recovery in California against the drawee bank by section 4406, subdivision (4), it cannot recover from City on a third-party beneficiary warranty after a period of one year. In short, suit in California by the drawer on contract principles is barred by the one-year statute of limitation, whether brought against the drawee bank, the collecting bank, or the depositary bank. (Com. Code, § 4406; Code Civ. Proc., § 340, subd. (3).) Thus, the demurrers to Allied's contract counts were properly sustained.

Allied also brought suit against City under a tort theory of conversion, and we now consider that theory. The principal authorities on which it relies are the declaration in Commercial Code section 3419, ''An instrument is converted when . . . It is paid on a forged endorsement,'' and cases which permit the payee of a check paid on a forged endorsement to sue the depositary bank. (See *Harry J. White Lbr. Co.* v. *Crocker-Citizens Nat. Bank,* 253 Cal.App.2d 368, 374-376 [61 Cal.Rptr. 381] ; and cases cited in California Code Comment 2 to section 4207.)

Plaintiff argues that the drawer, equally with the payee, should be entitled to sue depositary and collecting banks in conversion. But its argument does not take into account the different ways in which the drawer and the payee are damaged by the payment of a check on a forged endorsement. When a depositary bank honors a forged endorsement, it has foreclosed the true payee from presenting and collecting that particular instrument and thereby damaged the payee directly and immediately by its improper negotiation. The drawer, however, has not suffered injury, for even though the depositary bank has paid out money on a forged endorsement, the drawer may never be charged for the money, since the drawee bank may reject the instrument and protect the drawer from loss. Even after the instrument has been paid by the drawee bank the drawer has not yet been injured. (*Stone & Webster Engineering Corp.* v. *First Nat. Bank,* 345 Mass. 1 [184 N.E.2d 358, 99 A.L.R.2d 628] ; Com. Code, § 3409.) At that point the money paid out is the drawee bank's money,

and it is possible the drawee bank may never charge the drawer's account for the money. Only when the drawee bank charges the drawer's account with an unauthorized charge based on the forged endorsement has the drawer been injured; even then his damage remains minimal until his time to reverse the charge has run out. It is true that if a collecting or depositary bank has proceeds of a forgery in its possession under section 3419, subdivision (3) it may become liable to the true owner, normally the payee, for the amount of proceeds remaining in its hands. If a drawer can establish a claim to such proceeds as the true owner, he will be able to recover them, but this claim will be one in assumpsit and not in conversion. (Com. Code, § 1103.)

It is thus apparent that when a depositary or collecting bank pays out money on a forged endorsement, it has converted nothing of the drawer's and done no more than part with its own money, an act which quite possibly may damage no one but itself. (*United States Rubber Co.* v. *Union Bank & Trust Co.*, 194 Cal.App.2d 703 [15 Cal.Rptr. 385].) The only conversion which adversely affects the drawer occurs when the drawee bank charges his account, and the drawer's cause of action for such conversion only runs against the drawee bank. Thus while a payee is entitled to sue a depositary bank in conversion for money paid to a third person on a forged endorsement which should have been paid to him, a drawer has no such right to sue a depositary or collecting bank for conversion. (*Stone & Webster Engineering Corp.* v. *First Nat. Bank, supra.*) Since the drawer has no right of action for conversion against the depositary or collecting banks, his cause of action against them is restricted to his contract claim based on the warranties impliedly extended to him by the negotiation of the check, a claim subject in California to the limitation period of one year.

To summarize, the drawer enjoys the benefit of warranties extended by prior banks to the drawee bank, but he also remains subject to his statutory duties arising from his relationship with the drawee bank, and the depositary bank, as a third-party beneficiary, is entitled to the benefit of the performance of these duties. ██ Thus while the drawer is entitled to the benefit of the warranty of the genuineness of the endorsement given by the depositary bank to the drawee bank, the depositary bank in turn is entitled to the benefit of the performance of the drawer's statutory and contractual

duties owed to the drawee bank to timely discover forged endorsements or suffer the charge against his account to stand. (Cf. *Connor* v. *Great Western Sav. & Loan Assn.*, 69 Cal.2d 850, 864 [73 Cal.Rptr. 369, 447 P.2d 609].)

Judgment affirmed.

Herndon, Acting P. J., and Wright, J., concurred.

A petition for a rehearing was denied August 6, 1969, and appellant's petition for a hearing by the Supreme Court was denied September 4, 1969.